UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Joel Marvin Munt, | Civ. No. 19-1560 (WMW/BRT) |
| Plaintiff, | |
| v. | |
| Paul Schnell, David Reishus, Sherlinda Wheeler, Jeff White, Jeanne Michels, Sue Farmer, and Glenn D. Lisowy, | **REPORT AND RECOMMENDATION** |
| Defendants. | |

This matter is before the Court on Plaintiff Joel Marvin Munt's First Motion for Expedited Temporary Restraining Order Pursuant to Fed. R. Civ. P. 65(b) ("Motion for a TRO").[1] (Doc. No. 17.) Therein, Munt alleges that "[t]he DOC harbors an environment where retaliation is tolerated and encouraged to the point where it is an unofficial policy/custom." (*Id.* at 3.) His present motion focuses especially on the education staff at Minnesota Correctional Facility – Oak Park Heights ("MCF-OPH"), whom Munt claims have "taken part in a conspiracy to have [him] subjected to violence (even if unsuccessful)." (*Id.*) Defendants oppose the motion. (*See* Doc. No. 35, Defs.' Mem.)

---

[1]   Despite its title, this is actually Munt's second motion for a TRO in this matter. The first was filed on June 13, 2019, and makes substantially the same claims as the present motion. (*See* Doc. No. 3, Mot. for Temporary Restraining Ord.)

I.    **Background**

Munt seeks a TRO that prohibits the Department of Corrections ("DOC") and those acting on its behalf from reading his legal papers or retaining copies of documents printed or copied by Munt, and requires the same "to facilitate immediate pick up printouts and copy requests" made by Munt "with [Munt] watching to ensure that staff are not reading them or making additional copies." (*Id.*) Additionally, Munt seeks the following: (1) to prohibit the DOC from transferring Munt or otherwise taking any adverse actions against him as a "solution" to his present Complaint; (2) the issuance of a warning to the DOC that if such conduct occurs, the Court will presume that it was done in retaliation for this lawsuit; (3) any searches of Munt's cell must be done with both Munt and a witness present; (4) nothing must be taken from Munt's cell or destroyed without proof of a legitimate reason for doing so, which must be documented; (5) a witness must observe any disciplinary proceedings; (6) any retaliatory action will be reviewable by this Court; (6) contempt proceedings be initiated if Defendants are found to retaliate against Plaintiff; (7) and any officials found in contempt of court be sentenced to one year in prison and the DOC fined $100,000 for each incident and $10,000 per day until it complies. (*Id.* at 4–5.) Finally, Munt requests that the TRO state that Defendants Michels and Farmer are prohibited from coming within 1,000 yards of Munt, cease their retaliatory activities against Munt, and not have contact with any other offenders or staff who may be a witness in this action. (*Id.* at 5–6.)

Defendant Michels is the Education Director at MCF-OPH (Doc. No. 37, Michels Aff. ¶ 1.) Her duties include oversight of the library and law library at the prison. (*Id.*

2

¶ 2.) Defendant Farmer is the Library Technician and Correctional Teaching Assistant at MCF-OPH. (Doc. No. 36, Farmer Aff. ¶ 1.) Her work in the law library includes retrieving and reviewing offender documents from the library printer and processing legal-research requests. (*Id.* ¶ 2.) The law library at MCF-OPH has six computers for offenders to use. (*Id.*) Of those, four are dedicated to legal research and two for word-processing. (*Id.*) These computers are not set up to allow offenders general access to the internet. (*Id.*) On March 13, 2019, Defendant Farmer filed an incident report after discovering a link to the Chrome web browser in Munt's shared-drive folder on one of the computers dedicated to word-processing. (*Id.*; Doc. No. 36-1, Incident Report 11.)

On November 6, 2019, Munt was transferred from MCF-OPH to Minnesota Correctional Facility – Rush City ("MCF-RC"). (Michels Aff. ¶ 4; Doc. No. 37-1, Screenshot 1.)

## II.     Analysis

A temporary restraining order may be granted only if the moving party can demonstrate: (1) a likelihood of success on the merits; (2) that the movant will suffer irreparable harm absent the restraining order; (3) that the balance of harms favors the movant; and (4) that the public interest favors the movant. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). None of these factors by itself is determinative; rather, in each case the factors must be balanced to determine whether they tilt toward or away from granting injunctive relief. *Taylor Corp. v. Four Seasons Greetings, LLC*, 315 F.3d 1039, 1041 (8th Cir. 2003); *West Publ'g Co. v. Mead Data Cent., Inc.*, 799 F.2d 1219, 1222 (8th Cir. 1986). The party requesting the injunctive

3

relief bears the "complete burden" of proving all the factors listed above. *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987); *see also Watkins, Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003).

Here, the facts do not merit injunctive relief. First, Munt has failed to establish that he will suffer irreparable harm absent a TRO. The present motion is highly speculative as to the harm he will suffer. For example, Munt speculates that Defendants Michels and Farmer filed allegedly false disciplinary charges against him and restricted his printing privileges in retaliation for his filing of lawsuits. (Pl.'s First Mot. for Expedited TRO 8.) Similarly, Munt speculates that Michels and Farmer allegedly spread "his legal information to others after inappropriately reading legal materials" in retaliation. (*Id.* at 8.) There are no facts in the record that support Munt's claims, and such speculation fails to meet the considerable burden necessary to support an award of injunctive relief. Moreover, it appears that Munt is no longer housed at MCF-OPH, where Defendants Michels and Farmer are employed. (Michels Aff. ¶ 4; Screenshot 1.) Accordingly, this Court concludes that whatever risk of irreparable harm they might have posed has now passed, and that Munt's request that this Court order he not be transferred from MCF-OPH is now moot.

Second, the balance of harms weighs heavily against granting injunctive relief. Courts give due deference to prison policy restrictions that account for order, security, discipline, and cost containment. *Fowler v. Crawford*, 534 F.3d 931, 939 (8th Cir. 2008) (citing *Lovelace v. Lee*, 472 F.3d 174, 190 (4th Cir. 2006)). The extensive injunctive relief Munt seeks includes barring DOC staff from reviewing his printed documents or

4

searching his cell without him present. (*See* Motion for a TRO 4–5.) He further seeks to have allegedly retaliatory actions by DOC staff reviewed by this Court, and an order barring the DOC from transferring him to another facility. (*Id.*) Defendants argue that such far-reaching requests would disrupt the DOC's ability to run its facilities according to normal procedures and cautions that such granular oversight of prison administration is not the proper role of the judiciary. (Defs.' Mem. 5.) This Court agrees. Munt may use the DOC grievance system to seek remedial relief, but this Court declines his invitation to interfere with constitutional prison policies aimed at maintaining a safe, secure environment and necessary discipline. *Fowler*, 534 F.3d at 939 (citation omitted).

Third, based on the allegations in the Complaint and the affidavits of Defendants Michels and Farmer, it appears unlikely that Munt will succeed on the merits. For example, this Court observes that while a prisoner may maintain a § 1983 claim for retaliatory discipline where a prison official files disciplinary charges in retaliation for a prisoner's exercise of constitutional rights, such a claim fails if the alleged retaliation was issued for the *actual* violation of prison rules. *Hartsfield v. Nichols*, 511 F.3d 826, 829 (8th Cir. 2008) (citation omitted). A prison official may successfully defend against a retaliatory discipline claim by proffering "some evidence" that the inmate actually violated a rule. *Id.* (citing *Goff v. Burton*, 7 F.3d 734, 738–39 (8th Cir. 1993)). Therefore, so long as prison officials can show "some evidence" that their actions were taken pursuant to official policies and Munt's violations thereof, Munt cannot succeed on the merits.

The burden of proof Munt must carry to successfully litigate his access-to-courts claim is also quite high. He must demonstrate that Defendants intended to restrict his court access; merely showing that their actions had the collateral effect of doing so is insufficient. *Scheeler v. City of St. Cloud, Minn.*, 402 F.3d 826, 830 (8th Cir. 2005) (citing *Whisman v. Rinehart*, 119 F.3d 1303, 1313 (8th Cir. 1997); *Harrison v. Springdale Water & Sewer Comm'n*, 780 F.2d 1422, 1428 (8th Cir. 1986)). Moreover, Munt must establish that Defendants' conduct actually prevented him from litigating a claim. *Lewis v. Casey*, 518 U.S. 343, 351 (1996) (observing "[h]e might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known."). Absent this showing, Munt's access-to-courts claim will fail. Munt faces a similarly high bar to successfully litigate his conspiracy claim. *See, e.g.*, *Bonenberger v. St. Louis Metro. Police Dept.*, 810 F.3d 1103, 1109 (8th Cir. 2016) (stating that a plaintiff must identify "some facts which would suggest [the defendants] 'reached an understanding' to violate [his] rights") (quoting *City of Omaha Empls. Betterment Ass'n v. City of Omaha*, 883 F.2d 650, 652 (8th Cir. 1989)). In light of the speculative and conclusory allegations contained in his Complaint, this Court concludes that Munt's likelihood of success on the merits is slim, and the third *Dataphase* factor thus weighs in favor of denial of his motion for a TRO.

Finally, it is always in the public interest to protect constitutional rights. *Phelps-Roper v. Nixon*, 545 F.3d 685, 690 (8th Cir. 2008), *overruled on other grounds, Phelps-Roper v. City of Manchester*, 697 F.3d 678 (8th Cir. 2012) (en banc). However, in light of

the highly speculative nature of Munt's claims and the low bar prison officials must meet to rebut them, this factor weighs in favor of deference to the DOC's policy and security decisions on matters of prison administration. *Phelps-Roper*, 545 F.3d at 690 (stating "the determination of where the public interest lies is also dependent on the determination of the likelihood of success on the merits of the [constitutional] challenge").

In sum, this Court concludes that Munt has failed to satisfy the *Dataphase* factors required to obtain the extraordinary remedy of injunctive relief. Accordingly, this Court recommends that Munt's motion for a TRO be denied.

## RECOMMENDATION

Based on the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Plaintiff's First Motion for Expedited Temporary Restraining Order Pursuant to Fed. R. Civ. P. 65(b) (Doc. No. 17) be **DENIED.**


Date:  January 23, 2020

> *s/ Becky R. Thorson*
> BECKY R. THORSON
> United States Magistrate Judge


## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Pursuant to Local Rule 72.2(b)(1), a party may file and serve specific written objections to this Report within **fourteen (14) days**. A party may respond to those objections within **fourteen (14) days** after service thereof. All objections and responses must comply with the word or line limits set forth in LR 72.2(c).