# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

Joel Marvin Munt,                                                       Civ. No. 19-1560 (WMW/BRT)

                    Plaintiff,

v.

                                                                        **REPORT AND**
Paul Schnell, David Reishus, Sherlinda                                  **RECOMMENDATION**
Wheeler, Jeff White, Jeanne Michels,
Sue Farmer, and Glenn D. Lisowy,

                    Defendants.

---

Joel Marvin Munt, OID #236179, MCF-Rush City, 7600 525th St., Rush City, MN
55069, *pro se* Plaintiff.

Corinne Wright-MacLeod, Esq., Assistant Attorney General, counsel for Defendants.

---

BECKY THORSON, United States Magistrate Judge.

In this action, *pro se* Plaintiff Joel Marvin Munt, a prisoner confined at the

Minnesota Correctional Facility in Rush City, Minnesota ("MCF-RC"), alleges §§ 1983

and 1985 claims against Defendants in both their official and individual capacities. (*See*

Doc. No. 11, Am. Compl.) Defendants have moved to dismiss Plaintiff's Complaint in its

entirety. (Doc. No. 39, Mot. to Dismiss.) For the reasons that follow, this Court

recommends that Defendants' Motion to Dismiss be granted.

## I.    Background

Plaintiff filed his original Complaint in this matter on June 13, 2019, followed by an Amended Complaint on August 29, 2019.[1] (Doc. Nos. 1, 11.) Plaintiff alleges two retaliation claims against Defendants under § 1983 arising out of events that took place while Plaintiff was an inmate at Minnesota Correctional Facility – Oak Park Heights ("MCF-OPH"). Specifically, Plaintiff alleges (1) that Defendants retaliated by filing a disciplinary charge against him, and (2) Defendants retaliated against him by changing printing policies at MCF-OPH. (Am. Compl. 28–32.) Construing Plaintiff's Complaint liberally, he also alleges an access-to-courts-claim, an equal-protection claim, and a conspiracy claim against Defendants. (*See* Am. Compl. 4, 28–34.) Plaintiff seeks declaratory judgment (*id.* at 35–37, 42–43, 44, 48), injunctive relief (*id.* at 38–40, 43–47), and compensatory relief (*id.* at 41–42, 44, 48), including punitive damages (*id.* at 41–42, 44, 48).

The events underlying Plaintiff's retaliatory-discipline claim began on March 13, 2019, when Defendant Farmer filed an Incident Report related to a file that she found in Plaintiff's computer files. (*Id.* at 12; Doc. No. 36-1, Incident Report 11.) The Incident Report states that the file in question was a Chrome internet shortcut to the Department of Corrections ("DOC") policy page and that it is unclear how Plaintiff managed to access

_____

[1]    Plaintiff is a frequent litigant, and due to his now lengthy history of failed, frivolous, and duplicative claims, he was recently placed on the District's list of restricted filers. *Munt v. Schnell*, No. 19-CV-0056 (JNE/HB), 2020 WL 2129722, at *12 (D. Minn. Mar. 12, 2020), *report and recommendation adopted*, No. 19-CV-56 (JNE/HB), 2020 WL 2128666 (D. Minn. May 5, 2020).
.

the internet through that computer. (Incident Report 11.) The Incident Report further states that the file was found on a computer dedicated to word-processing, and that those computers are not set up to permit offenders access to the internet or the capability to save anything other than Word documents. (Incident Report 11.)

As a result of this Incident Report, Plaintiff alleges that he was charged by MCF-OPH authorities with Disorderly Conduct, and charged and convicted of Tampering with Security/Safety Devices. (Am. Compl. 14–15.) Plaintiff claims that during the course of his disciplinary proceedings, Defendants refused to identify appropriate policies, rules, or penological interests that supported his discipline. (*Id.* at 15–16.) He further claims that the hearing officer at the initial due process meeting "expressed prejudice due to his connection to Farmer." (*Id.* at 16.) Plaintiff states that at his final hearing, the hearing officer told him he was inappropriately grieving issues related to law-library issues and refused to consider whether Plaintiff's possession of the Chrome shortcut was, in fact, prohibited, as well as evidence Plaintiff believes demonstrated the "dishonesty" of Defendants Michels and Farmer. (*Id.* at 17.) Plaintiff claims that Defendant Reishus denied Plaintiff's appeal on March 25, 2019, affirming his discipline without addressing Plaintiff's arguments. (*Id.* at 21.) Plaintiff states that he wrote Defendant Schnell regarding his discipline. (*Id.* at 22.)

As a result of this hearing, Plaintiff was placed in segregation, and he claims that when his belongings were cleaned out of his cell, certain personal belongings were lost as well as various legal papers. (*Id.* at 18, 21.) Plaintiff asserts that without these he could not litigate various pending matters. Plaintiff does state, however, that he eventually

recovered "most" of his legal paperwork. (*Id.*) Plaintiff also alleges that as a result of segregation, he lost wages, a job, a desirable cell location, and the opportunity to work on his pending legal matters. (*Id.* at 19.)

Plaintiff's allegations regarding his retaliatory-printing-changes claim are as follows: Plaintiff alleges that he used to be able to print any sort of legal document, but that eventually Defendant Farmer began withholding certain documents from Plaintiff. (*Id.* at 25.) Over time, Plaintiff alleges that Defendant Farmer arbitrarily placed more and more blank forms off limits, leading to a situation in which Plaintiff claims he no longer knows whether he will receive what he prints. (*Id.*) Plaintiff claims that Defendant Farmer specifically targeted Plaintiff with these restrictions, does not apply them to other inmates, and is supported by Defendants Michels, Wheeler, and Reishus in her effort to frustrate Plaintiff's printing of legal materials. (*Id.*) Plaintiff claims that he has been threatened with losing his access to the law library entirely in retaliation for exercising his right to access the courts. (*Id.* at 26.)

On September 30, 2019, Plaintiff filed a motion for a temporary restraining order seeking, among other things, an order enjoining Defendants from reviewing Plaintiff's legal paperwork and Court review of any new acts of alleged retaliation. (Doc. No. 17, Mot. for a Temporary Restraining Ord. at 5–6.) On November 6, 2019, Plaintiff was transferred from MCF-OPH to MCF-RC. (*See* Doc. No. 34.) In a Report and Recommendation ("R&R") dated January 23, 2020, this Court recommended denying Plaintiff's motion, concluding that Plaintiff failed to demonstrate that he was entitled to

the extraordinary remedy of injunctive relief. (*See* Doc. No. 53, R&R.) That R&R was subsequently adopted by the District Court on April 6, 2020. (Doc. No. 68.)

Defendants filed a Motion to Dismiss on December 16, 2019, with an accompanying memorandum of law. (Doc. Nos. 39, 40.) Plaintiff filed a request to exceed the word limit for his response, that request was granted, and Plaintiff filed his Response on February 10, 2020. (Doc. Nos. 51, 55, 57.) Defendants submitted a Reply brief on February 13, 2020. (Doc. No. 62.)

## II.    Analysis

Defendants argue that Plaintiff's Complaint should be dismissed for the following reasons: (1) Plaintiff's claims for injunctive relief are moot in light of his transfer from MCF-OPH to MCF-RC; (2) Plaintiff has failed to state a claim for retaliation, denial of access to the courts, or conspiracy; (3) punitive damages are not warranted in this case; (4) the injunctive relief sought by Plaintiff is overbroad under the PLRA; (5) Plaintiff's claims for damages against Defendants in their official capacities are barred by the Eleventh Amendment; and (6) Plaintiff's claims for damages against Defendants in their individual capacities are barred by qualified immunity. (*See* Doc. No. 40, Mem. in Support.)

### A.    Standard of Review

Federal Rule of Civil Procedure 12(b)(1) provides that a party may move to dismiss a complaint for lack of subject-matter jurisdiction. A party contesting subject-matter jurisdiction may mount either a facial challenge or a factual challenge to a court's jurisdiction. *See Osborn v. United States*, 918 F.2d 724, 729–30 & n.6 (8th Cir. 1990).

5

On a facial attack, the court limits its consideration to the allegations of the complaint. *Id.* at 729 & n.6. On a factual attack, the court may consider matters outside the pleadings without converting the motion to one for summary judgment. *Id.* "[N]o presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Id.* at 730. In determining whether the plaintiff has sustained that burden, a court has the duty to construe liberally a pro se party's pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). However, "the Court may not supply additional facts or fashion a legal theory that assumes facts that have not been pleaded." *Benjamin v. Experian Info. Sols., Inc.*, No. 14-cv-810 (JRT/JJG), 2014 WL 3509044, at *2 (D. Minn. July 15, 2014) (citing *Stone v. Harry*, 364 F.3d 912, 914–15 (8th Cir. 2004)).

Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." However, the "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Under the current pleading standard, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Twombly*, 550 U.S. at

555. Thus, the Court in examining a motion to dismiss must determine whether the plaintiff raises a plausible claim of entitlement to relief after assuming all factual allegations in the complaint to be true. *Id.* at 558. Pro se complaints, however, "must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 849 (8th Cir. 2014). A motion to dismiss for failure to state a claim under Rule 12(b)(6) is the "appropriate vehicle" for dismissal based on res judicata. *Seldin v. Seldin*, 879 F.3d 269, 272 (8th Cir. 2018).

### B.    Failure to State a Claim

Defendants move to dismiss Plaintiff's Complaint, arguing that he has failed to state a claim upon which relief can be granted. (Mem. in Support 9–12.) Plaintiff disagrees. (*See generally* Response.) This Court will address each of Plaintiff's claims in turn.

### 1.    Retaliation Claims

Plaintiff alleges two separate claims for retaliation, one relating to the discipline he was subjected to, the other relating to printing rules in the law library. (*See* Am. Compl. 9–25.) Defendants argue that Plaintiff has failed to successfully plead the elements required to state a retaliation claim. (Mem. in Support 9–11.)

To establish a claim of retaliation, Plaintiff must allege facts sufficient to show that: 1) he exercised a constitutional right; 2) Defendants took adverse action toward him; and 3) it was his exercise of the constitutional right that was the motive for the adverse action. *Haynes v. Stephenson*, 588 F.3d 1152, 1155 (8th Cir. 2009) (citing *Meuir v.*

*Greene Cty. Jail Employees*, 487 F.3d 1115, 1119 (8th Cir. 2007)). A prisoner may bring a § 1983 claim for retaliatory discipline where a prison official files disciplinary charges in retaliation for a prisoner's exercise of constitutional rights, but such a claim fails if the alleged retaliation was issued for an actual violation of prison rules. *Hartsfield v. Nichols*, 511 F.3d 826, 829 (8th Cir. 2008) (citation omitted). A prison official may successfully defend against a retaliatory discipline claim by proffering "some evidence" that the inmate actually violated a rule. *Id.* (citing *Goff v. Burton*, 7 F.3d 734, 738–39 (8th Cir. 1993)).

### a.      Retaliatory Discipline

Plaintiff alleges that Defendants retaliated against him for exercising his right to access the courts by charging him with the Incident Report, rigging the disciplinary hearing process that followed it, and then punishing Plaintiff with segregation. (Am. Compl. 9–20.) This Court finds that this claim is conclusory because Plaintiff fails to allege facts that—if true—show that it was Plaintiff's exercise of a constitutional right that was the motivating factor in the adverse actions. *See Goff v. Burton*, 91 F.3d 1188, 1191 (8th Cir. 1996) (applying test to claim for retaliatory transfer); *Haynes*, 588 F.3d at 1156 (applying test to claim for retaliatory discipline). Moreover, Plaintiff's retaliatory discipline claim fails because Plaintiff's own Complaint contains evidence that he was disciplined for actually violating a rule. *Hartsfield*, 511 F.3d at 829 (citation omitted).

Plaintiff frequently inveighs that Defendant Farmer's Incident Report and Plaintiff's subsequent hearing and discipline were retaliatory, but merely asserting that an action is retaliatory is insufficient to establish a retaliation claim. *See Meuir*, 487 F.3d at

1119. Plaintiff also alleges that the Hearing Officer at his disciplinary hearing "thought I deserved discipline for writing kites against [Farmer and Michels]" and expressed that Plaintiff was "acting inappropriately grieving issues against Sue Farmer and Michels over Law Library issues and that appeared his primary consideration in the finding of 'guilt.'" (Am. Compl. 16–17.) Plaintiff's reliance on the Hearing Officer's views, however, is misplaced.

It is true that "[t]he filing of a prison grievance, like the filing of an inmate lawsuit, is protected First Amendment activity." *Lewis v. Jacks*, 486 F.3d 1025, 1029 (8th Cir. 2007). The Eighth Circuit has concluded, however that where an inmate's protected conduct is merely a factor in the prison's adverse action—not the motivating factor—the but-for test to establish retaliation is not met. *Goff*, 7 F.3d at 737 ("Finding that an impermissible retaliatory motive was *a factor* is insufficient to establish a claim in a prisoner retaliatory transfer case."); *see also Hazen v. Reagan*, 16 F.3d 921, 926 (8th Cir. 1994) (finding that although prisoner's filing of two lawsuits was a factor in his transfer, the transfer would have occurred because of prisoner's troublesome, manipulative conduct). And "if the discipline which the prisoner claims to have been retaliatory was in fact imposed for an actual violation of prisoner rules or regulations, then the prisoner's claim that the discipline was retaliatory in nature must fail." *Goff*, 7 F.3d at 738.

Here, even if the Hearing Officer believed Plaintiff should be disciplined for "inappropriately" filing grievances against Defendants Farmer and Michels, Plaintiff fails to reckon with the fact that Plaintiff's disciplinary hearing would never have occurred had Plaintiff not first violated the rules regarding internet access on computers dedicated

to word-processing in the law library. (*See* Incident Report.) This Court notes that Plaintiff does not deny that he was in possession of the Chrome shortcut identified in Defendant Farmer's Incident Report. Instead, Plaintiff claims ignorance of the relevant rule, insists it was never explained to him, asserts that such a rule could not possibly serve any legitimate penological interest, and accuses Defendant Farmer of retaliatory intent in filing the Incident Report in the first place. (Am. Compl. 14–17.) Therefore, because Plaintiff's Complaint demonstrates that the allegedly retaliatory discipline was in fact imposed for Plaintiff's actual violation of prison rules, Plaintiff's claim fail. *Goff*, 7 F.3d at 738.

### b.    Retaliatory Printing Changes

Plaintiff also alleges that, as a result of his filing of various lawsuits, Defendants retaliated against him by imposing new restrictions on his ability to print materials in the law library. (Am. Compl. 21–25.) This claim, too, is conclusory, because Plaintiff does not allege any facts connecting the printing restrictions to his exercise of a constitutional right. He merely asserts that crippling his ability to litigate in the courts "appears to have been a major motivating factor," but such speculation is insufficient to state a claim. (Am. Compl. 25.) Plaintiff also claims that Defendants Wheeler and Lisowy responded to his complaints about the alleged rule changes by threatening to take away his law library access altogether. (*Id.* at 26.) They did not do so, however, and Plaintiff may not maintain a retaliation claim based merely on speculation regarding what might have been. In sum, this Court concludes that Plaintiff's claim for retaliatory changes to printing procedures should also be dismissed without prejudice for failure to state a claim.

### 2.    Conspiracy Claims

Plaintiff alleges that Defendants conspired to retaliate against him due to his ongoing efforts at litigation in violation of 42 U.S.C. §§ 1983 and 1985. (Am. Compl. 5, 35, 37, 42.) Defendants argue that Plaintiff's allegations are conclusory, legally unsound, and should be dismissed. (Mem. in Support 12.)

A conspiracy claim under § 1983 requires a plaintiff to show that (1) a defendant conspired with others to deprive him of one or more constitutional rights; (2) at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) the overt act injured him. *White v. McKinley*, 519 F.3d 806, 814 (8th Cir. 2008) (citation omitted); *see Bonenberger v. St. Louis Metro. Police Dept.*, 810 F.3d 1103, 1109 (8th Cir. 2016) (stating that a plaintiff must identify "some facts which would suggest [the defendants] 'reached an understanding' to violate [his] rights") (quoting *City of Omaha Empls. Betterment Ass'n v. City of Omaha*, 883 F.2d 650, 652 (8th Cir. 1989)). The plaintiff must also prove an actual deprivation of a constitutional right or privilege. *Id.* (citation omitted). A conspiracy claim under § 1983 "requires allegations of specific facts tending to show a meeting of the minds among the alleged conspirators." *Murray v. Lene*, 595 F.3d 868, 870 (8th Cir. 2010) (internal quotation marks and citation omitted).

In order to establish a civil rights conspiracy under 42 U.S.C. § 1985(3), a plaintiff must satisfy the following factors:

> (1) the defendants conspired, (2) with the intent to deprive them, either directly or indirectly, of equal protection of the laws, or equal privileges and immunities under the laws, (3) an act in furtherance of the conspiracy, and (4) that they or their property were injured, or they were deprived of exercising any right or privilege of a citizen of the United States.

*Barstad v. Murray County*, 420 F.3d 880, 887 (2016). With respect to a § 1985

conspiracy claim, "a government entity or corporation cannot conspire with itself."

*Habhab v. Hon*, 536 F.3d 963, 969 (8th Cir. 2008) (citing Barstad, 420 F.3d at 887)

 Here, Plaintiff's § 1983 conspiracy claim fails for two reasons. First, Plaintiff fails

to identify a constitutional right of which he was deprived. Second, Plaintiff's conclusory

statements asserting that various Defendants conspired together to harm him are

insufficient to state a conspiracy claim. *Iqbal*, 556 U.S. at 678 (stating "[a] pleading that

offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of

action will not do") (quoting *Twombly*, 550 U.S. at 555). (*See* Am. Compl. 5, 9, 20, 31,

34.); *Twombly*, 550 U.S. at 556–57 (stating that "parallel conduct does not suggest

conspiracy, and a conclusory allegation of agreement at some unidentified point does not

supply facts adequate to show illegality").

 Plaintiff's § 1985 conspiracy claim also lacks merit because Defendants are all

employees and agents of the Minnesota DOC, and a government entity cannot conspire

with itself. *Habhab*, 536 F.3d at 969. An exception to this rule exists if, "at the time of

the conspiracy, [the defendants were] acting beyond the scope of their authority or for

their own benefit," but Plaintiff makes no such allegations. *Barstad*, 420 F.3d at 887.

 For these reasons, this Court recommends that Plaintiff's §§ 1983 and 1985

conspiracy claims be dismissed without prejudice.

### 3.    Access-to-the-Courts Claim

While he does not explicitly plead an access-to-the-courts claim, Plaintiff does allege throughout his Complaint that the discipline he was subjected to and the restrictions that have been placed on his printing privileges hindered his access to the courts. (*See, e.g.*, Compl. 19 ("While in SEG I was denied access to the Law Library and my legal papers, leaving me unable to do work on 3 suits I was bringing.").) Defendants argue that while Plaintiff may have been inconvenienced by Defendants' actions, he has failed to state an access-to-the-courts claim. (Mem. in Support 11.)

To prevail in an access-to-the-courts claim, a litigant must demonstrate that Defendants intended to restrict his court access; merely showing that their actions had the collateral effect of doing so is insufficient. *Scheeler v. City of St. Cloud, Minn.*, 402 F.3d 826, 830 (8th Cir. 2005) (citing *Whisman v. Rinehart*, 119 F.3d 1303, 1313 (8th Cir. 1997); *Harrison v. Springdale Water & Sewer Comm'n*, 780 F.2d 1422, 1428 (8th Cir. 1986)). In addition, a plaintiff must establish that defendants' conduct actually prevented him from litigating a claim. *Lewis v. Casey*, 518 U.S. 343, 351 (1996) (observing "[h]e might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known.").

Here, Plaintiff has failed to allege any facts showing that Defendants intended to restrict his court access. He has also failed to allege any facts sufficient to demonstrate that Defendants' conduct actually prevented him from litigating a claim. At best, Plaintiff's allegations show that Defendants' actions may have temporarily

inconvenienced his efforts to access the courts. But an access-to-the-courts claim fails
where the opportunity is not "lost for all time, . . . but merely in the short term."
*Christopher v. Harbury*, 536 U.S. 403, 413–14 (2002). Indeed, Plaintiff's voluminous
filings in both this and other pending matters amply demonstrate his ongoing capacity to
zealously litigate his claims. Accordingly, this Court concludes that Plaintiff's access-to-
the-courts claim should be dismissed without prejudice for failure to state a claim.

### 4.    Equal Protection Claim

Plaintiff alleges in his Complaint that he has been treated differently from other
prisoners seeking to print documents in the law library, and that such treatment violated
his right to equal protection. (*See, e.g.*, Am. Compl. 32.) Plaintiff cites specific instances
where other prisoners were allowed to print materials that are forbidden to him, and
Plaintiff alleges that these increased restrictions on his ability to print are not grounded in
actual rules, but in Defendants' animus toward Plaintiff due to his legal activities. (*Id.* at
23–27; Resp. 29–30.) In a footnote, Defendants suggest that allegations are insufficient to
state a claim. (Mem. in Support 10 n.2.) In his Response, Plaintiff explicitly asserts an
equal-protection claim arising out of the printing restrictions he faced in the law library.
Specifically, Plaintiff argues that he is a "class of one" under *Vill. of Willowbrook v.
Olech*, 528 U.S. 562 (2000). (Resp. 29–30.) For the reasons that follow, this Court
concludes that Plaintiff's class-of-one equal-protection claim should be dismissed.

In class-of-one claims, "the plaintiff [does] not allege membership in a class or
group" but rather "alleges that she has been intentionally treated differently from others
similarly situated and that there is no rational basis for the difference in treatment."

14

*Olech*, 528 U.S. at 564. "In the absence of a large number of disadvantaged people sharing a single characteristic, 'there is no way to know whether the difference in treatment was occasioned by legitimate or illegitimate considerations without a comprehensive . . . canvassing of all possible relevant factors.'" *Nolan v. Thompson*, 521 F.3d 983, 990 (8th Cir. 2008) (quoting *Jennings v. City of Stillwater*, 383 F.3d 1199, 1213–14 (10th Cir. 2004)). Accordingly, a class-of-one plaintiff is required to provide a specific and detailed account of the nature of the preferred treatment of the favored class, especially when a state actor enjoys broad discretion to balance a number of legitimate considerations. *Id.* (citing *Jennings*, 383 F.3d at 1214–15.)

Plaintiff's claim fails for two reasons. First, Plaintiff has failed to allege a specific and detailed account of the nature of the preferred treatment of the favored class. Plaintiff cites anecdotal evidence that other prisoners were not subjected to the same restrictions as he was but these isolated examples, without more, fail to establish the existence of a favored class or the preferential treatment thereof. Second, Plaintiff fails to identify any actual injury. As discussed above, while he may find the allegedly new printing rules inconvenient, they have not impeded his access to the courts. Accordingly, this Court recommends that Defendants' Motion to Dismiss be granted with respect to Plaintiff's equal protection claim.

## C.    Other Arguments

As discussed above, the Court recommends that Defendants' Motion to Dismiss be granted for failure to state a claim. For the sake of completeness in this Report and Recommendation, the Court also addresses the Governments' arguments regarding

immunity, mootness, and the relief sought in the event any claims are not dismissed in their entirety.

### 1. Immunity

Defendants argue that Plaintiff's claims against them must be dismissed because they are entitled to Eleventh Amendment immunity in their official capacities and qualified immunity in their individual capacities. (Mem. in Support 5–8.) Plaintiff responds that he was careful to only sue Defendants in their official capacities for injunctive relief, therefore their invocation of sovereign immunity is "frivolous," and that he has pleaded facts sufficient to demonstrate that Defendants are not entitled to qualified immunity. (Response 5–7.)

### a. Eleventh Amendment Immunity

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (quoting *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55 (1978)). "Absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court." *Graham*, 473 U.S. at 169. Minnesota has not waived its Eleventh Amendment immunity from suit in federal court. *See DeGidio v. Perpich*, 612 F. Supp. 1383, 1388-89 (D. Minn. 1985). And Congress has not abrogated immunity to §

1983 claims. *Burke v. Beene*, 948 F.2d 489, 493 (8th Cir. 1991). Moreover, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989).

"[T]he Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (citing Ex parte Young, 209 U.S. at 155-56 (1908)). The Supreme Court, however, has held that "[f]ederal courts may not award retrospective relief, for instance, money damages or its equivalent, if the State invokes its immunity," *Hawkins*, 540 U.S. at 437 (2004) (citing *Edelman v. Jordan*, 415 U.S. 651, 668 (1974)); *see also Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 102–03 (1984)). Requesting injunctive relief against state officials in federal court must be connected to an ongoing violation of federal law. *Green v. Mansour*, 474 U.S. 64, 68 (1985).

Here, Plaintiff correctly notes that he is not seeking damages from Defendants in their official capacities. (Response 5; *see* Am. Compl. 4.) However, certain of Plaintiff's claims for equitable relief are wholly retrospective in nature and are thus barred by the Eleventh Amendment. Specifically, Plaintiff seeks an order expunging his disciplinary charges and conviction from all records, and a declaration that Plaintiff never violated any rule. (Am. Compl. 37, 39.) But Plaintiff fails to plead any facts plausibly suggesting that the discipline he was subject to in 2019 is still having an adverse, ongoing effect upon him, much less that it constitutes an ongoing violation of federal law. Therefore, the Court recommends dismissal of Plaintiff's § 1983 claims to the extent he seeks retrospective injunctive relief against Defendants in their official capacities.

17

### b.    Qualified Immunity

"Qualified immunity shields government officials from liability unless the conduct violates clearly established statutory or constitutional rights of which a reasonable person would know." *Ferguson v. Short*, 840 F.3d 508, 510 (8th Cir. 2016). When analyzing a claim of qualified immunity, Courts examine "(1) whether the facts alleged or shown, construed most favorably to the plaintiffs, establish a violation of a constitutional right, and (2) whether that constitutional right was clearly established at the time of the alleged misconduct, such that a reasonable official would have known that the acts were unlawful." *Small v. McCrystal*, 708 F.3d 997, 1003 (8th Cir. 2013).

As discussed above, Plaintiff has failed to meet his pleading burden to establish a constitutional violation relating to any of his claims. Consequently, to the extent no constitutional violation is established, Defendants are entitled to qualified immunity as to those claims.

### 2.    Punitive Damages

Defendants argue that Plaintiff's claims for punitive damages are not warranted. (Mem. in Support 13–14.) "A factfinder may assess punitive damages in a section 1983 action when a 'defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" *Royal v. Kautzky*, 375 F.3d 720, 724 (8th Cir. 2004) (quoting *Smith v. Wade*, 461 U.S. 30, 56, 103 (1983)). Only if the factfinder makes this threshold finding must it then consider whether to award punitive damages in light of two potential justifications:

18

to "(1) punish willful or malicious conduct; and (2) deter future unlawful conduct." *Id.*
(citing *Coleman v. Rahija*, 114 F.3d 778, 787 (8th Cir. 1997).

Plaintiff mistakenly asserts in his Response that moving to dismiss based on the
unavailability of punitive damages is premature. (Resp. 65.) Courts in this district apply
*Iqbal/Twombly's* requirement that a complaint contain sufficient factual matter to render
entitlement to relief plausible to claims for punitive damages. *See Shukh v. Seagate
Technology, LLC*, 873 F. Supp. 2d 1087, 1090–1091 (D. Minn. 2012). Here, viewing the
facts alleged in the Complaint as true, this Court concludes that Defendants' alleged
conduct does not appear to have been spurred "by evil motive or intent" or involved
"reckless or callous indifference to the federally protected rights of others." *Royal*, 375
F.3d at 724. Accordingly, this Court recommends that Plaintiff's claims for punitive
damages be dismissed.

### 3.    Injunctive Relief

Defendants also argue that Plaintiff's requested injunctive relief is inappropriately
expansive. Specifically, Defendants further argue that Plaintiff's requested injunctive
relief is overbroad and contrary to the PLRA. 18 U.S.C. § 3626(a) provides:

> Prospective relief in any civil action with respect to prison conditions shall
> extend no further than necessary to correct the violation of the Federal right
> of a particular plaintiff or plaintiffs. The court shall not grant or approve
> any prospective relief unless the court finds that such relief is narrowly
> drawn, extends no further than necessary to correct the violation of the
> Federal right, and is the least intrusive means necessary to correct the
> violation of the Federal right. The court shall give substantial weight to any
> adverse impact on public safety or the operation of a criminal justice
> system caused by the relief.

19

*Id.* Here, this Court has already concluded above that Plaintiff's requests for injunctive relief are moot as they relate to MCF-OPH and the MCF-OPH Defendants because Plaintiff now resides at MCF-RC. This Court now concludes that Plaintiff's additional requests for statewide injunctive relief are not narrowly tailored to correct the alleged violations of Plaintiff's rights, and are therefore barred by the PLRA.

> For example, Plaintiff requests that the Court:

> Order the DOC to rework its disciplinary rules, procedures, practices and policies to ensure they cannot be abused by staff. Particular care must be taken to ensure rules are not subjective, vague or overbroad. Enforcement must be consistent. Enforcement must be nonretaliatory. This must include progressive discipline for staff, not just for filing false charges but also for supporting them[.]

(Amend. Compl. 39.) This is not a request for narrowly drawn relief necessary to correct the violation of a federal right, this is an invitation for the Court to rewrite DOC rules, policies, and procedures wholesale. Accordingly, this Court concludes that Plaintiff's requests for statewide injunctions are barred under the PLRA.[2]

---

[2]    While Defendants do not raise the issue, this Court observes that Plaintiff's claims for compensatory damages may also be barred by the PLRA. Section 1997e(e) of the PLRA provides:

> (e) Limitation on recovery. No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

*Id.* This statute applies to "all federal actions brought by prisoners," including those alleging constitutional violations. *See Sisney v. Reisch*, 674 F.3d 839, 843 (8th Cir. 2012) (concluding that the PLRA precluded recovery of compensatory damages because prisoner's free-exercise claims contained no allegation of physical injury) (quoting *Royal*, 375 F.3d at 723).

Footnote continued on next page.

### 4.     Mootness

Defendants argue that Plaintiff's claims for injunctive relief are now moot due to his transfer from MCF-OPH to MCF-RC. (Mem. in Support 7–8.) Plaintiff objects, arguing that (1) Plaintiff may be transferred back to MCF-OPH in the future; (2) Defendant Schnell's authority is not limited to MCF-OPH, as he is the statewide Commissioner of Corrections; and (3) Plaintiff's claims arise not solely from the conduct of the MCF-OPH Defendants, but also from policies and rules that affect correctional facilities statewide. (Resp. 11–14.)

A prisoner's transfer to a new facility may render that prisoner's claims for injunctive relief moot. *See Smith v. Hundley*, 190 F.3d 852, 855 (8th Cir. 1999); *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985). "This is especially true where the transfer takes the prisoner outside the authority and care of the allegedly offending prison officials." *Munt v. Larson*, No. 15-CV-0582 SRN/SER, 2015 WL 5673108, at *15 (D. Minn. Sept. 23, 2015) (citing *Randolph v. Rodgers*, 253 F.3d 342, 345–46 (8th Cir. 2001) (denying a prisoner prospective injunctive relief relating to employees of a facility the prisoner was no longer incarcerated at because those employees had no authority to enact any granted injunctive relief at the prisoner's present facility); *Anderson v. United States*, No. 11–cv–1486 (DWF/LIB), 2013 WL 1173948, at *7, n.11 (D. Minn. Jan. 25, 2013) *report and recommendation adopted*, No. 11–cv–1486 (DWF/LIB), 2013 WL 1173901 (D. Minn. Mar. 20, 2013), *aff'd*, 564 F. App'x 865 (8th Cir. 2014), *cert. denied*, 135 S.

---

Here, Plaintiff has not alleged in any of his filings that Defendants' actions resulted in a physical injury.

Ct. 1184 (2015) ("However, Plaintiff cannot be granted injunctive relief [related to receiving medical care] against the individual Defendants employed at FMC–Rochester, because his prison transfer has effectively mooted any claims for injunctive relief against those Defendants."); *Abdul–Jabbar v. West*, No. 05–CV–0373F, 2009 WL 2762270, at *9 (W.D.N.Y. Aug. 26, 2009) (stating the prisoner could not enjoin medical staff who did not have contact with or authority over him); *Davis v. Caruso*, No. 07–11740, 2008 WL 878878, at *4 (E.D. Mich. Mar. 28, 2008) ("Because plaintiff is no longer subject to the care of the officials he claims were denying him his ability to send legal mail and receive the treatment prescribed by his treating oncologist [because he was transferred to a new facility], his requests for preliminary injunctive relief are moot.")).

Here, by Plaintiff's own admission, Defendants Reishus, Wheeler, White, Michels, Farmer, and Lisowy ("the MCF-OPH Defendants") are employees of MCF-OPH. (*See* Am. Comp. 6–10 (listing Plaintiff's addresses and titles).) Plaintiff, however, has not been incarcerated at MCF-OPH—where all of the conduct underlying this lawsuit occurred—since his transfer to MCF-RC on November 6, 2019. Accordingly, this Court concludes that because he now resides at a facility where the MCF-OPH Defendants have no authority, Plaintiff's claims for injunctive relief against the MCF-OPH Defendants are now moot. Plaintiff's argument to the contrary that he might someday be transferred back to MCF-OPH in retaliation for his ongoing efforts at litigation (*see* Resp. 9–11) is speculative and unavailing.

Plaintiff's transfer to MCF-RC does not, however, moot all of Plaintiff's claims for injunctive relief against Defendant Schnell, who is the state Commissioner of

Corrections, and under whose authority Plaintiff remains. Specifically, some of Plaintiff's

claims for injunctive relief concern the DOC as a whole and thus have not been mooted

by his transfer. (*See, e.g.*, Am. Compl. 37 (requesting that the Court "[o]rder the DOC to

rework its disciplinary rules, practices and policies to ensure they cannot be abused by

staff").) Accordingly, this Court recommends that Plaintiff's claims for injunctive relief

that relate to MCF-OPH and the MCF-OPH Defendants be dismissed as moot.

**III.    Conclusion**

For the foregoing reasons, this Court recommends that Defendants' Motion to

Dismiss (Doc. No. 39) be granted.

## RECOMMENDATION

Based on the files, records, and proceedings herein, **IT IS HEREBY**

**RECOMMENDED** that:

1.    Plaintiff's Motion to Dismiss (Doc. No. 39) be **GRANTED** as set forth

above; and

2.    Judgment be entered accordingly.

Date:  June 22, 2020

*s/ Becky R. Thorson*
BECKY R. THORSON
United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the
District Court and is therefore not appealable directly to the Eighth Circuit Court of
Appeals. Pursuant to Local Rule 72.2(b)(1), a party may file and serve specific written
objections to this Report within **fourteen (14) days**. A party may respond to those
objections within **fourteen (14) days** after service thereof. All objections and responses
must comply with the word or line limits set forth in LR 72.2(c).